# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NEW ENGLAND PATRIOTS FANS,

        Plaintiffs,

    v.

NATIONAL FOOTBALL LEAGUE; ROGER
GOODELL, COMMISSIONER, Individually and in
his capacity as the Commissioner of the NFL; and
ROBERT KRAFT, Individually and in his capacity
as the owner of the New England Patriots,

        Defendants.

Civil Action No.  1:16-cv-10659-FDS

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## THE PLAINTIFFS' COMPLAINT

John D. Donovan, Jr. (BBO #130950)
John P. Bueker (BBO #636435)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA  02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
john.donovan@ropesgray.com
john.bueker@ropesgray.com

*Attorneys for Defendants National Football
League and Roger Goodell*

April 15, 2016

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

ARGUMENT ............................................................................................................... 3

I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION ....................................... 3

    A.    Jurisdiction Does Not Exist on the Basis of Diversity of Citizenship ................... 4

    B.    The Plaintiffs' Frivolous RICO Claim Does Not Suffice to Establish Federal Question Jurisdiction .................................................................................. 5

II.    THE PLAINTIFFS LACK STANDING ........................................................................ 6

III.   THE COMPLAINT DOES NOT PLAUSIBLY STATE A COGNIZABLE CLAIM UPON WHICH RELIEF CAN BE GRANTED ................................................. 9

    A.    Mass. Gen. Laws Ch. 93A (Count I) .................................................................... 10

    B.    Breach of Contract (Count II) ............................................................................... 11

    C.    Tortious Interference With Contractual Relations (Count III) ............................. 11

    D.    Fraud (Count IV) ................................................................................................... 12

    E.    Negligence (Count V) ........................................................................................... 12

    F.    Intentional and Negligent Infliction of Emotional Distress (Counts VI and VII) ....................................................................................................................... 13

    G.    Civil RICO (Count VIII) ...................................................................................... 14

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
    374 F.3d 23 (1st Cir. 2004) ............................................................................12, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................10

*Bell Atl. Co. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................10

*Bell v. Hood*,
    327 U.S. 678 (1946) ............................................................................................5, 6

*Bowers v. Fed'n Internationale de L'Automobile*,
    461 F. Supp. 2d 855 (S.D. Ind. 2006), *aff'd*, 489 F.3d 316 (7th Cir. 2007) ........8, 12

*Brooks v. AIG SunAmerica Life Assur. Co.*,
    480 F.3d 579 (1st Cir. 2007) ................................................................................11

*Castillo v. Tyson*,
    701 N.Y.S.2d 423 (N.Y. App. Div. 2000) .............................................................9

*CE Design Ltd. v. Am. Econ. Ins. Co.*,
    755 F.3d 39 (1st Cir. 2014) ....................................................................................5

*Consumers Sav. Bank v. Touche Ross & Co.*,
    613 F. Supp. 249 (D. Mass. 1985) ........................................................................4

*Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n*,
    942 F.2d 84 (1st Cir. 1991) ....................................................................................4

*Donahue v. City of Boston*,
    304 F.3d 110 (1st Cir. 2002) ..................................................................................7

*Efron v. Embassy Suites (P.R.), Inc.*,
    223 F.3d 12 (1st Cir. 2000) ..................................................................................14

*Ernst & Young v. Depositors Econ. Protection Corp.*,
    45 F.3d 530 (1st Cir. 1995) ....................................................................................3

*George Lussier Enters., Inc. v. Subaru of New Engl., Inc.*,
    393 F.3d 36 (1st Cir. 2004) ....................................................................................6

*Gouin v. Gouin*,
  249 F. Supp. 2d 62 (D. Mass. 2003) ....................................................................13

*Holmes v. Sec. Investors Protection Corp.*,
  503 U.S. 258 (1992) ..............................................................................................15

*Home Orthopedics Corp. v. Rodriguez*,
  781 F.3d 521 (1st Cir. 2015) .....................................................................5, 14, 15

*Hunt v. Wash. State Apple Advertising Comm'n*,
  432 U.S. 333 (1977) .................................................................................................4

*In re Lupron Mktg. & Sales Practices Litig.*,
  295 F. Supp. 2d 148 (D. Mass. 2003) ..............................................................12, 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  582 F.3d 156 (1st Cir. 2009) .................................................................................10

*Jupin v. Kask*,
  849 N.E.2d 829 (Mass. 2006) ................................................................................13

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012) .....................................................................................8

*L.A. Memorial Coliseum Comm'n v. Nat'l Football League*,
  726 F.2d 1381 (9th Cir. 1984) .................................................................................4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................7

*Mancina v. Goodell*,
  Civil Action No. 12-2512, 2013 WL 393041 (E.D. La. Jan. 30, 2013) ....................8

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010) ...........................................................................8, 9, 12

*Mendez Internet Mgmt. Svcs., Inc. v. Banco Santander de P.R.*,
  621 F.3d 10 (1st Cir. 2010) ....................................................................................14

*Ne. Erectors Ass'n of STEA v. Sec. of Labor, Occupational Safety & Health Admin.*,
  62 F.3d 37 (1st Cir. 1995) ........................................................................................3

*O'Donnell v. Boggs*,
  611 F.3d 50 (1st Cir. 2010) ....................................................................................11

*Rule v. Fort Dodge Animal Health, Inc.*,
  607 F.3d 250 (1st Cir. 2010) ..................................................................................11

*Strauss v. Long Island Sports, Inc.*,
    60 A.D. 2d 501 (N.Y. App. Div. 1978) ................................................9

*Toste Farm Corp. v. Hadbury, Inc.*,
    70 F.3d 640 (1st Cir. 1995)................................................................4

*United Seniors Ass'n, Inc. v. Philip Morris USA*,
    500 F.3d 19 (1st Cir. 2007)...............................................................7

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982).........................................................................7

*Wood v. Mass. Dep't of Transp.*,
    No. 13-CV-10115, 2013 WL 4010420 (D. Mass. Aug. 2, 2013) (Saylor, J.)...........8

*Woods v. Wells Fargo Bank, N.A.*,
    733 F.3d 349 (1st Cir. 2013)............................................................10

*Yarde Metals, Inc. v. New England Patriots Ltd. P'ship*,
    834 N.E.2d 1233 (Mass. App. Ct. 2005) ...............................................8

## STATUTES

12 U.S.C. §§ 3416-3418 .........................................................................3

18 U.S.C. § 1961 *et seq.*.................................................................5, 6, 14, 15

28 U.S.C. § 1331 ..................................................................................3

28 U.S.C. § 1332..............................................................................3, 4

28 U.S.C. § 1367..................................................................................6

28 U.S.C. § 2201..................................................................................3

Mass. Gen. Laws ch. 93A ....................................................................2, 10

## OTHER AUTHORITIES

1 MODERN TORT LAW: LIABILITY AND LITIGATION § 3:81 (2d ed.) ............................13

Fed. R. Civ. P. 9(b) ...........................................................................12, 14

Fed. R. Civ. P. 12(b)(1)...................................................................1, 3, 7, 15

Fed. R. Civ. P. 12(b)(6)...................................................................3, 9, 15

https://twitter.com/McCannSportsLaw .........................................................2

Michael McCann, *Deflategate, One Year Later: The Anatomy of a Failed Controversy* ...............2

U.S. CONST. Art. III ................................................................................................ 1, 6-9

Defendants National Football League ("NFL" or the "League") and NFL Commissioner Roger Goodell (together, the "NFL Defendants") respectfully submit this memorandum in support of their motion to dismiss the plaintiffs' Expedited Complaint for Temporary Restraining Order and Preliminary Injunction (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), for want of jurisdiction or for absence of standing, and 12(b)(6), for failure to state a cognizable claim.

## INTRODUCTION

The plaintiffs' Complaint is fatally flawed on jurisdictional and standing grounds and should therefore be dismissed. This Court lacks jurisdiction over the plaintiffs' claims. There is no diversity of citizenship and no basis to exercise federal question jurisdiction.

Jurisdiction aside, the plaintiffs' claims are meritless. The plaintiffs lack standing to assert claims about the internal enforcement of discipline under the National Football League's Constitution and Bylaws. A "case or controversy" does not arise under Article III of the Constitution because football fans claim to be aggrieved by League disciplinary decisions. Issues suitable for debate on sports radio simply do not pose matters amenable to judicial resolution. And in all events, the plaintiffs' legal theories are baseless. The plaintiffs' factual allegations do not establish claims that are cognizable under the statutes and common law principles they invoke.

For all the reasons set forth below, the Complaint should be dismissed with prejudice. A hearing on these charges is not necessary.

## NATURE AND STAGE OF THE PROCEEDINGS

This action arises out of the controversy the media has dubbed "Deflategate." (Compl. ¶ 2.) Self-proclaimed fans of the New England Patriots (the "Patriots") contend that the NFL Defendants have caused them harm by imposing discipline on the Patriots, as a member club

under the NFL Constitution and Bylaws, that rescinds the Patriots' first-round pick in the 2016 Player Selection Meeting (the "NFL Draft"). (Compl. ¶¶ 14, 31, 34.) The plaintiffs also target as a defendant Mr. Robert Kraft, the principal owner of the Patriots, apparently on the ground that he did not contest the League's disciplinary decision. (Compl. ¶ 33.) By its terms, the Complaint does not seek monetary damages. The pleading requests a declaration that "the policies and practices of the Defendants as described in this Complaint violate the rights of Plaintiffs and may not lawfully be enforced in the future." (Compl. Prayer for Relief ¶ 1.).[1]

The allegations of the Complaint appear to be a verbatim reproduction of an article that appeared in *Sports Illustrated* magazine.[2] In sum, in their capacities as "fans" of the Patriots, and in one case as a season ticket holder, the plaintiffs complain that the League's decision to rescind the Patriots' first-round draft pick was wrongful based upon the inferences they draw from that article. They claim that the NFL Defendants' conduct violated certain common law duties, constituted a violation of Mass. Gen. Laws ch. 93A, and amounted to "racketeering." The pleading does not identify the plaintiffs' claimed "injuries" with particularity. It generally refers to "emotional distress" (Compl. ¶ 78), the emotional "devastat[ion]" of one plaintiff's 7-year-old daughter (Compl. ¶ 7), and (unfathomably) the plaintiffs' "fears of arrest, prosecution and conviction" and inability to "exercise their constitutional rights." (Compl. ¶ 46). The complaint does not attempt to connect the dots between these ostensible "injuries" and its

---

[1]    One of the named plaintiffs, Mr. Michael DiMauro, issued a press release on April 8, 2016, that publicly announced his request that "Attorney Carey remove him as a plaintiff, effective immediately." *See* https://twitter.com/McCannSportsLaw (Apr. 8, 2016). In a subsequent filing in this Court, Mr. DiMauro, through a representative, stated that he had been "misled" by Attorney Carey about the contents of the Complaint. (ECF No. 18.) This Court has granted a motion by Attorney Carey to remove Mr. DiMauro and another plaintiff, Feihua Chang, from the Complaint. (ECF No. 17.)

[2]    *See* Compl. ¶ 17; Michael McCann, *Deflategate, One Year Later: The Anatomy of a Failed Controversy*, SPORTS ILLUSTRATED (Jan. 18, 2016), *available at* http://www.si.com/nfl/2016/01/18/deflategate-one-year-later-tom-brady-bill-belichick.

multiple assertions that "accordingly," a restraint on rescission of the Patriots' first-round draft pick is the appropriate remedy. (Compl. ¶¶ 58, 63, 71, 94.)

This Court *sua sponte* denied the plaintiffs' prayer for a temporary restraining order and a preliminary injunction. (ECF No. 9.) The Court first observed that the Complaint did not appear to plausibly allege a cognizable claim for relief. *Id.* at 2-3. With respect to the "likely success" prong of the conjunctive elements for preliminary injunctive relief, the Court held that the "plaintiffs are not likely to succeed in establishing that they have standing to assert the claims in the complaint; that they were parties to any relevant contract, express or implied; that the defendants owed them any relevant duty of care; or that there is any legally cognizable injury for which the law will provide relief." *Id.* at 3.

As set forth below, the Court should dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) because it lacks subject matter jurisdiction and because the pleading does not state a claim upon which relief can be granted.

## ARGUMENT

## I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION

The plaintiffs invoke the subject matter jurisdiction of this Court[3] on the ground of diversity of citizenship of the parties and on the claim that the action arises under the laws of the United States.[4] (Compl. ¶ 3.) *See* 28 U.S.C. §§ 1331, 1332. Jurisdiction does not exist under either statute.

---

[3]     "When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Ne. Erectors Ass'n of STEA v. Sec. of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995).

[4]     The plaintiffs also claim that this Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Right to Financial Privacy Act, 12 U.S.C. §§ 3416-3418. (Compl. ¶ 3.) But the Declaratory Judgment Act establishes only a remedy, not a basis for federal jurisdiction. *See, e.g.*, *Ernst & Young v. Depositors Econ. Protection Corp.*, 45 F.3d 530, 534 (1st Cir. 1995). The Financial Privacy Act establishes federal jurisdiction only for actions to "enforce any provision of th[at] chapter," 12 U.S.C. § 3416, but the plaintiffs have not even hinted at a claim under that statute.

-3-

**A.      Jurisdiction Does Not Exist on the Basis of Diversity of Citizenship**

Federal district courts have original jurisdiction of civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."  28 U.S.C. § 1332(a).  On the face of the Complaint, the plaintiffs plainly do not meet the requirement that the controversy be between "citizens of different states."  Two of the putative named plaintiffs are alleged to be citizens of Massachusetts.  (Compl. ¶¶ 8, 10.)  One of the defendants, Robert Kraft, is also alleged to be a citizen of Massachusetts.  (Compl. ¶ 16.)  Further, the NFL is an unincorporated association made up of individual member organizations, *see L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1389 (9th Cir. 1984), and such an association is considered a citizen of all the states in which its members reside.  *See Consumers Sav. Bank v. Touche Ross & Co.*, 613 F. Supp. 249, 251-52 (D. Mass. 1985).  The plaintiffs allege that one of the NFL's members, the Patriots, is located in Massachusetts.  (Compl. ¶ 5.)  These overlaps in citizenship destroy diversity jurisdiction.  *See Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 642 (1st Cir. 1995) ("Diversity must be complete: the citizenship of each plaintiff must be shown to be diverse from that of each defendant.").

The plaintiffs also fail to make adequate allegations about the amount in controversy.  Where a plaintiff does not seek monetary damages, as here, "the amount in controversy is measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977); *see Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991) ("Once challenged . . . the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.").  The plaintiffs' allegations of injury to *them* are both generalized and highly attenuated.  The Complaint's failure

even to attempt to articulate how the plaintiffs' ostensible injuries amount to $75,000 each[5] is accordingly also fatal to the exercise of diversity jurisdiction.

### B. The Plaintiffs' Frivolous RICO Claim Does Not Suffice to Establish Federal Question Jurisdiction

Although the Complaint by its terms purports to advance a federal cause of action under the Racketeer Influenced and Corrupt Organization ("RICO") statute,[6] a court may nevertheless dismiss an action on jurisdictional grounds when the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction[,] or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

That is the case here. Diversity jurisdiction is so obviously unavailable that RICO could only have been invoked in a misplaced attempt to establish jurisdiction that otherwise does not exist. The plaintiffs' RICO claim labels the NFL Defendants and Mr. Kraft as a racketeering "enterprise" (Compl. ¶ 92), but illogically contends that the NFL – itself an organization comprised of independent member teams – imposed discipline on one of those member teams. (Compl. ¶ 30.) The pleading also fails to specify "predicate acts" sufficient to constitute a "pattern" of racketeering activity. The Complaint's primary claim that the League has wrongfully rescinded a first-round draft choice self-evidently describes a single act, not "continuous" activity. *Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 530 (1st Cir. 2015). And the Complaint's attempt to plead a "pattern" alleges facts utterly unrelated to the NFL's decision; it asserts generally that the "enterprise" fraudulently induced fans to purchase game tickets or cable television subscriptions. (Compl. ¶ 93.) But that purported conduct and its

---

[5] The several plaintiffs cannot aggregate their individual claims to satisfy the $75,000 amount in controversy requirement. *See CE Design Ltd. v. Am. Econ. Ins. Co.*, 755 F.3d 39, 43 (1st Cir. 2014) (citing *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294-95 (1973)).

[6] *See* 18 U.S.C. § 1964(c); Compl. ¶¶ 87-92.

consequences are entirely distinct from the conduct and injury the plaintiffs claim to have sustained by reason of the rescission of the Patriots' first-round draft pick. So that erases any possibility of a "pattern" of misconduct and any chance that the plaintiffs have suffered "*racketeering* injury." There simply is no "direct relation between the injury asserted and the injurious conduct alleged." *George Lussier Enters., Inc. v. Subaru of New Engl., Inc*., 393 F.3d 36, 51 (1st Cir. 2004) (quoting *Holmes v. Sec. Investors Protection Corp.*, 503 U.S. 258, 268 (1992)). Finally, the plaintiffs do not contend they were injured in their "business or property" by a RICO violation, only that they sustained psychic injuries. Indeed, the pleading does nothing more than recite RICO's statutory elements, unadorned with factual allegations that implicate those elements. Those defects alone are sufficient to label the plaintiffs' RICO claim "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682-83. And that is all that is required to show that this Court should not exercise subject matter jurisdiction under the federal question statute.[7]

## II.    THE PLAINTIFFS LACK STANDING

Although expressed as violations of two statutes and a variety of common law obligations, the essence of the plaintiffs' claim is that the NFL Defendants wrongfully imposed discipline on a member club of the League under the NFL's Constitution and By-Laws.[8] The plaintiffs do not have standing to contest that discipline. Their generalized claim of "injury" as "fans" of the Patriots does not amount to a "case or controversy" under Article III of the U.S. Constitution. Plaintiffs' failure to establish Article III standing requires dismissal of the

---

[7]    In the alternative, the Court should dismiss the RICO count for failure to state a claim, and then decline to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

[8]    Although the Complaint liberally quotes from a *Sports Illustrated* article that discusses the role of players in the controversy, the discipline imposed as a result, and the litigation that has ensued, all of that arises under the Collective Bargaining Agreement ("CBA") between the NFL and the NFL Players' Association. The discipline at issue in this proceeding has nothing to do with the CBA, but rather was imposed upon a member club under the NFL Constitution and Bylaws. *See* Compl. ¶ 31.

Complaint under Federal Rule of Civil Procedure 12(b)(1). *See United Seniors Ass'n, Inc. v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007) ("The defendants' Article III . . . argument, which calls into question our subject-matter jurisdiction, rests on Federal Rule of Civil Procedure 12(b)(1).").

To meet the Constitution's standing requirements, a plaintiff must allege: "(1) that he has suffered injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560. The causal connection must be sufficiently direct; it "cannot be overly attenuated." *Donahue v. City of Boston*, 304 F.3d 110, 115 (1st Cir. 2002).

The plaintiffs' claims of injury all relate to the League's decision to rescind the Patriots' first-round draft pick. (Compl. ¶ 1.) But none of the injuries alleged are "concrete," "particularized," or "actual." *Lujan,* 504 U.S. at 560. They are instead strictly "conjectural or hypothetical." *Id*. The Complaint asserts that the Patriots' loss of a draft pick will cause the plaintiffs "emotional distress" (Compl. ¶ 78), that one plaintiff's seven-year-old daughter will no longer attend games with him (Compl. ¶ 7), and that the plaintiffs "have dealt with embarrassment, ridicule, and depression due to the rest of the country who is jealous of the Patriots 'piling on' and criticizing the Patriots and their fans for being 'cheaters.'" (Compl. ¶ 79.) Those allegations are plainly insufficient to satisfy Article III's standing requirement. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982) ("[Respondents] fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence

presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III."); *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) (citing *Pagán v. Calderón*, 448 F.3d 16, 24 (1st Cir. 2006)) (generalized grievances are insufficient to satisfy Article III's standing requirement); *Wood v. Mass. Dep't of Transp.*, No. 13-CV-10115, 2013 WL 4010420, at *3 (D. Mass. Aug. 2, 2013) (Saylor, J.) ("It is not enough simply to be unhappy with [an agency's] decision; a plaintiff must allege an individualized harm.").

Similarly generalized grievances with decisions by sports teams or leagues have invariably been held insufficient to satisfy standing requirements. Fans, spectators and ticket holders do not have standing to challenge allegedly unfair or disappointing sports conduct or outcomes. *See Bowers v. Fed'n Internationale de L'Automobile*, 461 F. Supp. 2d 855, 859 (S.D. Ind. 2006), *aff'd* 489 F.3d 316 (7th Cir. 2007) ("The uniform weight of established case law holds that a failure to satisfy the subjective expectations of spectators at a sporting event is not actionable under law."); *Mancina v. Goodell*, Civil Action No. 12-2512, 2013 WL 393041, at *3 (E.D. La. Jan. 30, 2013) (season ticketholder's alleged mental suffering did not "entitle[] him to a cause of action" where the league-imposed punishment was "accepted by those involved").

And that stands to reason. The purchaser of a ticket to a sporting event holds only a limited license to enter an arena and view the game. *Yarde Metals, Inc. v. New England Patriots Ltd. P'ship*, 834 N.E.2d 1233, 1236 (Mass. App. Ct. 2005) ("The purchase of a ticket to a sports or entertainment event typically creates nothing more than a revocable license."). It follows that fans and ticket holders are entitled to receive only what they are promised: the ability to attend and watch the game they paid for. *See Mayer v. Belichick*, 605 F.3d 223, 236-37 (3d Cir. 2010) (season ticket holder suffered no cognizable injury where he received exactly what he was

promised, the ability to attend football games between two NFL teams). But that emphatically does not translate into cognizable "injury" when the game does not go as they hoped. *See Castillo v. Tyson*, 701 N.Y.S.2d 423, 424–25 (N.Y. App. Div. 2000) (dismissing action for refund of ticket price for bout in which Mr. Tyson was disqualified for biting Mr. Holyfield's ear: "The plaintiffs received what they paid for, namely, the right to view whatever event transpired"); *Strauss v. Long Island Sports, Inc.*, 60 A.D. 2d 501, 510 (N.Y. App. Div. 1978) (finding that complaint regarding non-participation by certain professional basketball players "does not state a cause of action": "Assuming … that every person who bought a season ticket did so in the expectation that Dr. J would play for the Nets, any such expectation was unreasonable as a matter of law….").

Ultimately, the courts' universal refusal to accord standing to fans and spectators is grounded in practicalities. If a fan has standing to challenge discipline administered to his favorite team as too *harsh*, what will stop a fan from contesting punishment of a rival as too *lenient*? If teams make poor personnel decisions, players violate the rules, or referees blow a call, one can expect any number of fans to complain – and often on both sides of the issue.[9] But those debates belong on sports radio, not in the federal courts. The judiciary would otherwise become the ultimate arbiter of every matter that disappoints a fan, converting every grievance with the rules into an Article III "controversy." Surely that was not the Framers' intent.

## III. THE COMPLAINT DOES NOT PLAUSIBLY STATE A COGNIZABLE CLAIM UPON WHICH RELIEF CAN BE GRANTED

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[9]     *See Mayer*, 605 F.3d at 237 ("At the very least, a ruling in favor of [plaintiff] could lead to other disappointed fans filing lawsuits because of 'a blown call' that apparently caused their team to lose or any number of allegedly improper acts committed by teams, coaches, players, referees and umpires, and others.").

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint's factual content must "raise a right to relief above the speculative level," allowing the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 555. Conclusory allegations and legal conclusions masquerading as facts will not suffice to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678. Applying those principles here, the Complaint does not state a plausible claim for relief under any of the eight causes of action advanced.

### A.      Mass. Gen. Laws Ch. 93A (Count I)

Massachusetts General Laws Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," and it provides a private right of action to any person who "has been injured by another person's use or employment of" such an unfair method. Mass. Gen. Laws ch. 93A, §§ 2(a), 9(1).

The Complaint fails both elements. To violate Chapter 93A, a defendant must engage in conduct that is "within at least the penumbra of some common-law, statutory or other established concept of unfairness, is immoral, unethical, oppressive, or unscrupulous, [or] causes substantial injury to consumers." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156 (1st Cir. 2009) (quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69 (1st Cir. 2009)). But the plaintiffs do not explain how the League's enforcement of its own rules – uncontested by the member club – fits that requirement. "This failure to set forth any particular acts or practices marked by 'an extortionate quality . . . of unfairness [and deceptiveness]' . . . necessitates a finding that the facts as pled are insufficient to state a claim." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013) (first and second alterations in original) (quoting *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998)). Likewise, the plaintiffs' "injuries" are insufficient to state a claim. "[I]njury under chapter 93A

means *economic injury* in the traditional sense." *Rule v. Fort Dodge Animal Health, Inc*., 607 F.3d 250, 255 (1st Cir. 2010) (emphasis added). The attenuated and inchoate psychic injuries the plaintiffs claim to have suffered here do not qualify.

## B. Breach of Contract (Count II)

To establish a breach of contract, a plaintiff must allege facts sufficient to infer that "a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach." *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007). The Complaint does not begin to meet that test. The plaintiffs claim they had "an implied or quasi contract" with the defendants (Compl. ¶ 57), but do not describe either its terms or how it was breached. Simply put, the pleading does not identify "the specific contractual promise the defendant failed to keep." *Id.* (quoting *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007)). And it does not even hint that any contract – an *exchange* of promises – was bilateral. That is fatal.

## C. Tortious Interference With Contractual Relations (Count III)

To plead tortious interference under Massachusetts law, a plaintiff must plausibly allege that "(1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract [by inhibiting the third party's or the plaintiff's performance thereof, depending on the theory]; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *O'Donnell v. Boggs*, 611 F.3d 50, 54 (1st Cir. 2010) (alteration in original) (quoting *Harrison v. NetCentric Corp.*, 744 N.E.2d 622, 632 (Mass. 2001)). The plaintiffs tacitly allege the NFL Defendants interfered with their "contracts" for game tickets and cable television subscriptions. But the pleading does not articulate any conduct that inhibited their expectations under those "contracts." The plaintiffs got to (and *will* get to) witness games or broadcasts. Accordingly, they got (and *will* get)

precisely what they bargained for.  *See, e.g.*, *Bowers*, 461 F. Supp. 2d at 859 (citing cases); *Mayer*, 605 F.3d at 236-37.

### D.      Fraud (Count IV)

Federal Rule of Civil Procedure 9(b) obliges a plaintiff to "specify the who, what, where, and when" of any alleged fraud.  *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).  A fraud plaintiff must also plausibly allege "(1) the making of a false statement of fact; (2) known by the defendant to be false when made (or believed by the defendant to be so); (3) with the intent that the victim rely on its truth; and (4) upon which the victim did rely in parting with his property."  *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 181 (D. Mass. 2003) (citing *Commonwealth v. Leonard*, 227 N.E.2d 721 (Mass. 1967)).

The plaintiffs do not identify a single statement made by any defendant that was actually or knowingly false.  The conclusory allegation that the defendants "fabricated facts" in the course of the "Deflategate" investigation (Compl. ¶ 69) is entirely unsupported by the Complaint's factual content.  And no plaintiff contends that he relied to his detriment on any such supposed "fabricated facts."  Quite to the contrary, the plaintiffs suggest they *understood* them to be false.  They accordingly were not defrauded.  Indeed, they do not even claim to have parted with any of their property *on the basis of* any defendant's representations.

### E.      Negligence (Count V)

The plaintiffs allege that the defendants "were negligent in their actions, individually and as a whole."  (Compl. ¶ 72.)  Specifically, the Complaint asserts that the NFL Defendants "negligently handled the framing, punishments and 'investigations' of the Patriots and Tom Brady."  (Compl. ¶ 73.)

But negligence requires allegations "that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *See Jupin v. Kask*, 849 N.E.2d 829, 834-35 (Mass. 2006). Those key ingredients of a negligence claim are missing. The pleading does not even intimate that the NFL Defendants owed these plaintiffs any duty; it does not suggest a relationship between the NFL Defendants and the plaintiffs at all. *See* 1 MODERN TORT LAW: LIABILITY AND LITIGATION § 3:81 (2d ed.) ("Ordinarily, and in the absence of some special relationship, no legal duty rests on a member of the general public to render services in the preservation of the person or property of another even if the means with which to do so are at hand."). It follows as a matter of law that no duty existed, and that any negligence was not the causative link in any "injury" the plaintiffs claim to have sustained.

**F.      Intentional and Negligent Infliction of Emotional Distress (Counts VI and VII)**

The plaintiffs have not alleged that the NFL Defendants committed the "extreme and outrageous" conduct, "beyond all possible bounds of decency," that is required to state a claim for intentional infliction of emotional distress. *See Gouin v. Gouin*, 249 F. Supp. 2d 62, 73 (D. Mass. 2003) (quoting *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318-19 (Mass. 1976)) (holding that to state a claim for intentional infliction of emotional distress, the plaintiffs must allege: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and 'was utterly intolerable in a civilized community;' (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'").

### G.    Civil RICO (Count VIII)

The plaintiffs allege that the defendants violated state and federal Racketeer Influenced and Corrupt Organizations Acts (as defined above, "RICO"), 18 U.S.C. §1961(a), (b), (c), (d). (Compl. ¶ 87.)[10]  A civil RICO claim requires allegations that defendants committed conduct of an "enterprise" through a "pattern" of "racketeering activity."  *Home Orthopedics*, 781 F.3d at 528 (citing *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003)). To plead a RICO "enterprise," a plaintiff must allege "evidence of an ongoing organization" that is distinct from the individual defendants and whose "various associates function as a continuing unit."  *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 164 (D. Mass. 2003) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  "[T]he 'pattern' element requires a plaintiff to show at least two predicate acts of 'racketeering activity' which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes."  *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 15 (1st Cir. 2000).  The law further requires the plaintiff to demonstrate that the "predicates are related, and that they amount to or pose a threat of continued criminal activity."  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

As noted above with respect to this Court's jurisdiction, the plaintiffs broadly allege that the defendants violated RICO by committing mail or wire fraud based on allegations that the defendants "committed predicate acts through the use of the mails or interstate wires in furthering their fraudulent inducement of consumers of the Patriots to purchase tickets, cable, and NFL Sunday Ticket."  (Compl. ¶ 93.)   On their face, those allegations are not particularized, as required by Fed. R. Civ. P. 9(b).  *See Mendez Internet Mgmt. Svcs., Inc. v. Banco Santander*

---

[10]    Although the plaintiffs state in the title of the count that they bring "State and Federal" RICO claims, they do not cite any Massachusetts RICO statute, and Massachusetts does not *have* a RICO statute.

*de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010).   The pleading simply does not "specify the who, what, where, and when" of the alleged mail or wire fraud.  *Alternative Sys. Concepts*, 374 F.3d at 29.  But more importantly, those ostensible acts are utterly unrelated to the plaintiffs' principal claim that the League wrongfully imposed discipline on a member club.  The plaintiffs' allegations of "enterprise" and "predicate" acts are simply throwaways untethered to their primary claim.

The Complaint likewise does not allege that the defendants acted as a "continuing unit" or engaged in "continuous" misconduct.  *Home Orthopedics*, 781 F.3d at 530.  And the pleading does not causally connect any "predicate" acts of the defendants' to any harm to the plaintiffs recognized by the statute.  *See* 18 U.S.C. § 1964(c) (to sustain a RICO claim, a plaintiff must allege that he has been "injured in [his] business or property by reason of a [RICO] violation."); *Holmes*, 503 U.S. at 268-270 (requiring the plaintiff to show that the commission of the RICO predicate act is the direct proximate cause of a plaintiff's injuries).  The Complaint does not advance any allegation that the plaintiffs were injured in their "business or property" at all.

## CONCLUSION

For the reasons set forth above, the NFL Defendants respectfully request that this Court dismiss this case for want of jurisdiction or for absence of standing under Federal Rule of Civil Procedure 12(b)(1); or, in the alternative, that the Court dismiss the plaintiffs' Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

The NFL Defendants respectfully submit that this motion can be decided on the papers without oral argument.

Dated: April 15, 2016                    Respectfully submitted,

/s/ John D. Donovan, Jr.
John D. Donovan, Jr. (BBO #130950)
John P. Bueker (BBO #636435)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
john.donovan@ropesgray.com
john.bueker@ropesgray.com

*Attorneys for Defendants National Football
League and Roger Goodell*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2016, I filed the foregoing Memorandum in Support of Motion to Dismiss the Plaintiffs' Complaint with the United States District Court for the District of Massachusetts using the CM/ECF system, and caused it to be served on all registered participants via the notice of electronic filing (the "NEF").


<u> /s/ John D. Donovan, Jr.                      </u>
John D. Donovan, Jr.