UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND PATRIOTS FANS,<br><br>      Plaintiffs<br><br>      v.<br><br>NATIONAL FOOTBALL LEAGUE; ROGER GOODELL, COMMISSIONER, Individually and in his capacity as the Commissioner of the NFL; and ROBERT KRAFT, Individually and in his capacity as the owner of the New England Patriots,<br><br>      Defendants. | CIVIL ACTION<br>NO. 1:16-cv-10659-FDS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ROBERT KRAFT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

      Defendant Robert Kraft ("Defendant" or "Mr. Kraft") submits this memorandum of law in support of his motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[1] This memorandum incorporates by reference the arguments raised in the motion to dismiss and supporting memorandum of law filed by Defendants National Football League and Roger Goodell (the "NFL Defendants") (ECF Nos. 20-21) and further addresses deficiencies in the Complaint that are specific to the claims against Defendant.

      Plaintiffs' claims against Mr. Kraft not only suffer from the same fatal legal flaws outlined the NFL Defendants' Brief, but they also are completely undermined by the factual allegations contained in the Complaint itself. The only allegations in the Complaint critical of Mr. Kraft are that he allegedly "had remedies to attempt to get Plaintiffs' draft pick back," but that he "negligently did not defend Plaintiffs and the fans of the Patriots by not protecting their

---

[1] This motion is timely filed. *See* Defendant's Opposition to Plaintiffs' Motion for Entry of Entry of Default of Defendant Robert Kraft and Plaintiffs' Motion for Default Judgment as to Robert Kraft, filed herewith.

first round pick." (Compl. ¶¶ 52, 75). Even ignoring the self-evident flaw that the Complaint names Mr. Kraft individually, rather than the team which was the entity penalized by the NFL,[2] and hence was the entity with whatever theoretical rights there were to challenge those penalties, the Complaint's allegations wholly refute these conclusory criticisms regarding the decision not to pursue legal remedies. As the Complaint acknowledges, "[t]he Patriots could have internally petitioned Goodell to reconsider his punishment, but doing so would have enlarged the controversy and, perhaps more importantly, appeared doomed to fail." (Compl. ¶ 31). After conceding that the Patriots could not successfully have appealed the League's decision to the Commissioner, the Complaint credits Mr. Kraft with also correctly rejecting the idea of suing the League. (Compl. ¶ 32). Asserting that such an "antitrust litigation strategy" had been "used with some success by the late Oakland Raiders owner Al Davis in the 1980s and '90s," the Complaint then *dismisses* this option as unlikely to succeed in this case:

> 33. Still, such a litigation strategy ***would have likely taken years to play out*** and would have awkwardly pitted the 74-year-old Kraft in court against the same league in which he is considered one of its most influential figures. Kraft's ***argument would also have been a difficult fit for antitrust law***. Recall that Davis had used antitrust law to challenge the NFL on the issue of business relocation, which is a type of controversy well suited for antitrust law. Kraft's antitrust challenge, in comparison, would have been based on league discipline, which is a traditional power of a professional sports league and is ***less likely to have received a favorable reception in court***. Therefore, it's ***not surprising that Kraft declined to challenge the NFL***, even if the loss of draft picks is a source of great aggravation to the Patriots and their fans.

(Compl. ¶ 33) (emphasis added). The Complaint also describes Tom Brady's "collectively bargained right to appeal" as a "striking contrast" to the alleged lack of redress available to the Patriots and to Mr. Kraft. *Id.*, ¶ 34.

After acknowledging the unlikely efficacy of any challenge by the team to the League's decision, the Complaint nonetheless bases its claims against Mr. Kraft on the basis that he did not

---

[2] And also ignoring that the team took unprecedented action — never pursued by any other team in the NFL — to challenge the conclusions on which the NFL's penalties were based. *See* www.wellsreportincontext.com

pursue the very strategies the Plaintiffs acknowledge would have been ineffective. Thus, even beyond the evident flaws of, for example, failure to allege any contract with Mr. Kraft, any basis for a legal duty owed Plaintiffs to pursue challenges to League discipline, any fraudulent conduct, etc. (*see infra*), the essential premise of all the claims against Defendant simply has no substance based on the very facts alleged in the Complaint.[3]

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION

Defendant joins in the NFL Defendants' assertion that this Court lacks jurisdiction to hear this case, as set forth in detail in their brief at pages 4-6. There is no diversity since the Complaint alleges that two of the Plaintiffs are citizens of Massachusetts and Mr. Kraft is a citizen of Massachusetts. (Comp. ¶¶ 8, 10, 16). In addition, the speculative and attenuated nature of Plaintiffs' alleged injury fails to satisfy the amount in controversy requirement. Nor is there federal question jurisdiction. *See* NFL Defendants' Brief at 5, *citing Bell v. Hood*, 327 U.S. 678, 682-83 (1946). *See also* Section III.G below.

### II. PLAINTIFFS LACK STANDING

Plaintiffs lack standing to challenge Mr. Kraft's conduct in *not* litigating the NFL's decision in court. The Complaint fails to satisfy each of the Constitutional requirements for standing: injury in fact, causation, and redressability. Plaintiffs' speculative claims of "emotional distress" due to the Patriots' loss of a draft pick are precisely the sort of "conjectural or hypothetical" injuries that are insufficient to establish an injury in fact. *See* NFL Defendants' Brief at p. 7, and cases cited therein,  In addition, the alleged injuries Plaintiffs complain of are

---

[3] One of the original named plaintiffs has implicitly acknowledged that Mr. Kraft should not have been named as a defendant in this action. In a motion filed in this Court through his individual counsel, named plaintiff Mr. Michael DiMauro sought to be removed from the case because "he was never apprised that Patriots owner, Robert Kraft, was going to be included as a Defendant in the Motion" and he "was lied to about Kraft" by Plaintiffs' counsel. (ECF No. 18). Mr. DiMauro alleges that the "last copy of the motion that he and several others reviewed and acknowledged . . . made no mention of Robert Kraft being named as a defendant." *Id.*

DB1/ 87400014.5

not "fairly traceable to the actions of [Mr. Kraft]"—in fact, the Complaint suggests that, had Mr. Kraft (or, more accurately, the non-defendant New England Patriots) taken legal action against the League to contest the decision, such action would not have been effective in reversing the decision. This completely undermines any claim that a failure to pursue a legal challenge to the NFL's discipline caused Plaintiffs' alleged injuries. Further, Mr. Kraft is without the ability or authority to restore the draft pick, and no remedy against him will provide the restoration of the draft pick.

## III.  THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

On a motion to dismiss under Rule 12(b)(6), the Court must conduct a two-step, context-specific inquiry. *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must distinguish the factual allegations from the conclusory legal allegations. *Id*. Factual allegations are accepted as true, while conclusory legal allegations are not. *Id*. Second, the Court must determine whether the factual allegations "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] to 'draw on' [its] 'judicial experience and common sense.'" *Id*., (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Plaintiffs have failed to "plausibly narrate a claim for relief" against Mr. Kraft under Rule 12(b)(6), and the Complaint should therefore be dismissed with prejudice.

### A.  Mass Gen. Laws Ch. 93A (Count I)

The conduct alleged against Mr. Kraft - that he chose not to pursue legal remedies that the Complaint acknowledges were doomed to fail - falls woefully short of the "immoral, unethical, oppressive, or unscrupulous" conduct necessary to sustain a 93A claim. *Mass Eye & Ear Infirmary v. QLT Phototherapeutics Inc.*, 552 F.3d 47, 69 (1st Cir. 2009). Having conceded that Mr. Kraft's decision was justifiable and "not surprising" in light of the legal and practical realities, Plaintiffs cannot allege that the decision was "immoral, unethical, oppressive or

- 4 -

unscrupulous.".

### B. Breach of Contract (Count II)

The Complaint also fails to state a claim for the alleged breach of contract, failing to identify any contract that any Plaintiff had with Mr. Kraft, let alone a contract that required he pursue legal remedies against the League. Plaintiffs must allege "that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013) (internal quotation and citation omitted). *See also* NFL Defendants' Brief, at p. 11. .

### C. Tortious Interference with Contractual Relations (Count III)

Plaintiffs' tortious interference claim must fail because, in addition to failing to articulate any conduct by Mr. Kraft *intended* to interfere with any of the fans' contracts, the Complaint fails to allege that Mr. Kraft had an "improper motive or means" in deciding not to pursue a legal challenge against the League, as required to establish a tortious interference claim. *O'Donnell v. Boggs,* 611 F.3d 50, 54 (1st Cir. 2010) (quoting *Harrison v. NetCentric Corp.*, 744 N.E.2d 622, 631 (Mass. 2001)). To the contrary, the factual allegations of the Complaint suggest that Mr. Kraft's decision was based on entirely proper and prudent concerns regarding the ineffectiveness of such a challenge.

### D. Fraud (Count IV)

"Under Massachusetts law, fraud requires that the defendant made a knowingly false statement concerning a material matter that was intended to, and did in fact, induce the plaintiff's reliance and, through that reliance, created an injury." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 357 (1st Cir 2013). Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead fraud with particularity, specifying "the false statements and by whom they were made" and identify "the basis for inferring scienter." *N. Am. Catholic Educ. Programming Found. Inc, v. Cardinale*, 567 F.3d 8, 12 (1st Cir. 2009). The Complaint does not allege that Mr. Kraft made any false statements, much less knowingly and with intent to induce reliance.

### E.  Negligence (Count V)

Plaintiffs have failed to allege "that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted and that there was a causal relation between the breach of the duty and the damage." NFL Defendants' Brief at 12, quoting *Jupin v. Kask*, 849 N.E.2d 829, 834-35 (Mass. 2006). Even assuming the Mr. Kraft owed the fans a duty of reasonable care, Plaintiffs' conclusory allegation that Mr. Kraft "negligently did not defend Plaintiffs and fans" is plainly insufficient to establish a breach of that duty when the Plaintiffs themselves have acknowledged the prudence of his decision not to challenge the League formally. Furthermore, the Plaintiffs do not allege that Mr. Kraft's decision not to pursue a challenge *caused* the loss of the draft pick.

### F.  Intentional/Negligent Infliction of Emotional Distress (Counts VI and VII)

By alleging no *unreasonable* or negligent conduct by Mr. Kraft, the Complaint obviously fails to allege the sort of "extreme and outrageous conduct" necessary to sustain its claims for intentional infliction of emotional distress. *See* NFL Defendants Brief at p. 13, citing *Gouin v. Gouin*, 249 F. Supp. 2d 62, 73 (D. Mass 2003) (internal quotations omitted).

### G.  Civil RICO (Count VIII)

Plaintiffs' RICO claim must also be dismissed because they appear to have merely copied and pasted the statutory elements of the claim without providing *any* factual allegations that could plausibly support such a claim. *See* NFL Defendants' Brief at p. 14-15. Mr. Kraft's alleged conduct does not even create an *inference* that he engaged in a "pattern" of "racketeering activity" or that he acted as a "continuing unit" with the League. *Id., citing Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 520 (1st Cir. 2015).

### CONCLUSION

For the reasons set forth above and in the NFL Defendants' Brief, Defendant Robert Kraft respectfully requests that this Court dismiss this case for lack of jurisdiction and absence of

standing under Rule 12(b)(1); or, alternatively, that the Court dismiss Plaintiffs' Complaint for failure to state a cognizable claim under Rule 12(b)(6).

                Respectfully submitted,

                **Robert Kraft**

                By His Attorneys,

                /s/ Daniel L. Goldberg
                Daniel L. Goldberg , BBO #197380
                daniel.goldberg@morganlewis.com
                Charles L. Solomont, BBO #557190
                carl.solomont@morganlewis.com
                Emma D. Hall, BBO #687947
                emma.hall@morganlewis.com
                **MORGAN, LEWIS & BOCKIUS LLP**
                One Federal Street
                Boston, MA  02110-1726
                +1.617.341.7700

Dated:  April 27, 2016

- 8 -

## CERTIFICATE OF SERVICE

I, Emma D. Hall, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 27, 2016.

/s/ Emma D. Hall
Emma D. Hall

DB1/ 87400014.5